UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAMODAR CHANDRA−DAS,<br><br>Plaintiff,<br><br>v.<br><br>JOHN DOE NO. 1, *et al.*,<br><br>Defendants. | Case No. 1:23-cv-00234-EPG (PC)<br><br>ORDER DIRECTING CLERK TO ASSIGN DISTRICT JUDGE<br><br>AND<br><br>FINDINGS AND RECOMMENDATIONS TO DISMISS THIS ACTION WITH PREJUDICE FOR FAILURE TO STATE A CLAIM AND TO DENY MOTIONS FOR INJUNCTIVE RELIEF AND CONTEMPT OF COURT<br><br>(ECF Nos. 17, 18, 19)<br><br>OBJECTIONS, IF ANY,<br>DUE WITHIN THIRTY DAYS |

Plaintiff Damodar Chandra-Das is proceeding *pro se* and *in forma pauperis* (IFP) in this civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff filed his Second Amended Complaint (SAC) on March 22, 2024 (ECF No. 18), which is now before this Court for screening. The Court has reviewed Plaintiff's SAC, and for the reasons described in this order, will recommend that this action be dismissed.

In addition, the Court will also recommend that Plaintiff's motions for preliminary injunction (ECF No. 17) and contempt of Court (ECF No. 19) also be denied.

1

Plaintiff has thirty days from the date of service of these findings and recommendations to file his objections.

## I. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). Additionally, as Plaintiff is proceeding *in forma pauperis* (ECF No. 11), the Court may screen the complaint under 28 U.S.C. § 1915. That statute requires that the Court dismiss the case at any time if it determines that the action is either frivolous or malicious, or "fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B).

## II. PLAINTIFF'S INITIAL COMPLAINT

Plaintiff filed the complaint commencing this action (ECF No. 1) on January 19, 2023, followed by First Amended Complaint (ECF No. 4) on February 7, 2023. In his FAC, Plaintiff named seven defendants (*id.* at 6–7) and alleged they denied him adequate medical care, retaliated against him, and violated his due process and equal protection rights in violation of First, Eighth, and Fourteenth Amendments to the U.S. Constitution as well as Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.* (*id.* 14–17).

In support of his claims, Plaintiff alleged that he injured his right hand while working in prison's kitchen in February of 2018, reported his injury to Supervisory Cook Macias, but received inadequate medical care for his injury.[1] Despite ongoing pain, a recommendation for surgery, and multiple grievances, his treatment was delayed, and requests for further medical evaluation were denied. Plaintiff was also subjected to polygraph and an interview by Investigative Service Unit, based on a piece of paper found in the kitchen that claimed Plaintiff was going to poison the food. Plaintiff alleged that the information on Confidential Information

---

[1] For a more detailed summary of FAC, see Court's First Screening Order, ECF No. 14 at 3–5.

Disclosure (CID) form dated February 27, 2018 related to this incident was false. Relying on the false information in the CID, however, Warden of CSATF transferred Plaintiff to HDSP. Following the transfer, Plaintiff's condition worsened due to additional injuries and substandard care. Plaintiff claimed he faced punitive actions and harsh working conditions from prison staff, particularly after being assigned to kitchen duties despite his injury. He ultimately underwent surgery in August 2022, four years after the initial recommendation, by which time the delay had led to worsening nerve damage.

On February 20, 2024, the Court screened Plaintiff's complaint. (ECF No. 14). As a threshold matter, the Court reviewed relevant pleading rules. First, the Court explained the requirement of providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and explained that Plaintiff's complaint does not meet that requirement. (ECF No. 14 at 6–7).

Second, the Court found that under the Federal Rules of Civil Procedure 18(a) and 20(a)(2), Plaintiff may not proceed on unrelated claims against different defendants in a single action. (ECF No. 14 at 8). ("Plaintiff's First Amended Complaint names seven different defendants concerning different events on different dates spanning several years and involving such unrelated issues as inadequate medical care, retaliatory RVRs, and lack of accommodations at work and during grievances process, among many.")

The Court also identified certain issues and provided relevant legal standards "that may assist Plaintiff," and gave Plaintiff leave to amend complaint. (*Id.*)

Moreover, the Court determined that "at least some of the claims would be barred by the statute of limitations even after accounting for equitable tolling due to exhaustion of administrative remedies." (ECF No. 14 at 13). The Court found that "Plaintiff's allegations against Defendant Macias stem[ming] from an incident that occurred on February 5, 2018," "Plaintiff's claims related to a Confidential Information Disclosure (CID) Form dated February 27, 2018," and "Plaintiff's claim that his transfer to HDSP was illegal because it relied on unreliable information in the CID Form" were all time barred. (ECF No. 14 at 13–14).

The Court also provided legal framework for statute of limitations analysis, and explained that "Plaintiff does not allege specific facts regarding equitable tolling, including the period when Plaintiff was exhausting his underlying claims. If Plaintiff chooses to file an amended complaint, he should allege facts sufficient to determine how much, if any, equitable tolling is due." (ECF No. 14 at 13).

The Court also provided legal standards for alleging a supervisor liability and explained that Plaintiff's allegations against the Wardens, including CASTF Warden, were conclusory and not supported by factual detail. (ECF No. 14 at 15).

Finally, the Court provided Plaintiff legal standards for claims alleging Eighth Amendment deliberate indifference to serious medica needs, Fourteenth Amendment Equal Protection clause violations, First Amendment retaliation, false allegations, and conditions of confinement (*id.* at 15–22), as well as Title II of ADA (*id.* at 22–25).

**III.     SUMMARY OF PLAINTIFF'S SECOND AMENDED COMPLAINT**

In his SAC (ECF No. 18), Plaintiff names as defendants S. Sherman, Warden of California Substance Abuse Treatment Facility (CSATF), and L. Macias, supervising cook at CSATF.[2]

For Claim 1, Plaintiff alleges that Warden Sherman violated his Fifth, Eighth, and Fourteenth Amendment rights, as well as "deprivation of property without just compensation," "due process, negligence, right to medical care." (*Id.* at 3). Plaintiff states about on February 5, 2018, he suffered a work injury while working in central kitchen. He was positioning food carts filled with food for the inmate population, when he accidentally crushed his right hand in between two cards. (*Id.*)

For Claim 2, Plaintiff alleges violations of Fourteenth Amendment, due process, negligence, inadequate medical care, malpractice, and infringement of workers comp. (*Id.* at 4).

---

[2] Plaintiff encloses a motion (ECF No. 18 at 21), in which he dismisses his complaint against the following parties identified in his FAC: John Doe #2, D. Snell, S. Gates, the United States, and T. Fountain. Because at this stage of the case filing of SAC supersedes the previous complaint in its entirety, the dismissal is not necessary.

4

In support of this claim, he states that his hand was swollen, disfigured and riddled with severe pain, so he immediately went to go and report this accident to his supervisor and cook, L. Macias, who was located at his office at the time that the incident occurred, about 50 feet away. (*Id.* at 4, 11). Plaintiff had been left unsupervised when this incident occurred and was ordered by L. Macias to stop by the medical clinic on the way back to his housing unit to be evaluated, since his shift ended for the day. (*Id.* at 5–6, 12).

The same day as the injury, medical staff assessed and treated Plaintiff's work injury with a splint and wrapped an ace bandage around his right hand. (*Id.* at 6). He was informed that a follow up appointment to see the doctor was scheduled, and that he would be seen in a couple of days. (*Id.* at 6, 13). He did not get evaluated by the doctor until a couple of months later on May 2, 2018, by Dr. Winfred Kokor after countless medical requests and grievances were filed concerning treatment. (*Id.*) This was due to an adverse transfer authorized by Defendant S. Sherman, acting warden. (*Id.* at 13).

The Defendant, S. Sherman, delayed Plaintiff's right to reasonably access treatment by falsifying information (CID), which resulted in actual injury that had to be corrected on August 24, 2022. (*Id.* at 7).

Plaintiff was injured again on June 26, 2018, and suffered mental and emotional duress including pain and suffering, and irreparable harm as a result of the defendant's failure to provide treatment on about February 5, 2022. (ECF No. 18 at 7).

The Defendant failed to make treatment available for Plaintiff when he asserted his First Amendment rights when requesting some time off to treat his injuries. (*Id.* at 8). This resulted in Complex Regional Pain Syndrome (CRPS). (*Id.*)

Plaintiff also has a history of a learning disability when enrolling into the Voluntary Education Program (VEP). (*Id.* at 8–9). Such criteria made Plaintiff eligible to be a part of the program. The exigent circumstances involved presenting the hallmarks associated with Plaintiff's cognitive deficits, such as school transcripts. (*Id.* at 9).

1  Plaintiff's exhibits show that under Title II of Americans with Disabilities Act (ADA),
2  he is a qualified individual with a disability, and because of his disability, he was excluded
3  from participating in public entity's services. (ECF No. 18 at 9).
4  The defendant failed to consider these factors respectively before relegating the
5  Plaintiff's right to due care process. (*Id.* at 10). The defendant was also made aware that
6  Plaintiff struggled with severe Attention Deficit Hyper-Active Disorder (ADHD) before
7  admonishing him without due process of law to High Desert S.P. (*Id.*)
8  On January 1, 2018, Defendant Macias was supervising Plaintiff when he pushed a
9  heavy cart up the ramp into the food truck. (ECF No. 18 at 11). A food cart fell over and
10 scraped Plaintiff's leg. Plaintiff sustained de minimis injuries. He had never been trained on
11 how to load the food carts onto the food truck, and he was also never instructed to report to
12 medical to have his injuries assessed. (*Id.* at 11).
13 After Plaintiff injured his hand on February 5, 2018, Plaintiff requested a lay-in (time
14 off) until he was evaluated by a doctor. (ECF No. 18 at 13). When Plaintiff inquired about
15 leisure, however, Defendant Macias retaliated by falsifying information and conspiring with
16 someone to falsifying information regarding the poisoning of the food for the inmate
17 population, CID. (*Id.* at 14).
18 Plaintiff also suffered a new injury on August 24, 2024. (ECF No. 18 at 14).
19 Plaintiff was relying on the orthopedics evaluation and initial recommendations,
20 inferred on May 15, 2018 by Dr. Kokor. (*Id.* at 15).
21 Upon transferring to another institution, a different review panel determined the
22 methods of treatment prescribed, which Plaintiff was excluded from receiving, if not ostracized
23 by John Doe 2, Warden of High Desert State Prison.[3]
24 Plaintiff seeks punitive, actual, and compensatory damages. (*Id.* at 5).

---

[3] Not named as a defendant in SAC (ECF No. 18) and therefore, not a defendant in this case.

### IV. ANALYSIS OF PLAINTIFF'S SECOND AMENDED COMPLAINT

#### A. 42 U.S.C. § 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. *Graham v. Connor*, 490 U.S. 386, 393–94 (1989).

To state a claim under section 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a *person* acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988) (emphasis added); *see also Marsh v. County of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). In most cases, "person" means the same thing under § 1983 as in ordinary use. A prison is not "a person" under § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989) ("'[P]erson' as used in § 1983 likewise does not include a State."); *Allison v. California Adult Auth.*, 419 F.2d 822, 823 (9th Cir. 1969) ("[S]tate agencies which are but arms of the state government are not 'persons' for purposes of the Civil Rights Act.")

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Ashcroft v. Iqbal*, 556 U.S. 662, 676–77 (2009). In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 695 (1978).

Supervisory personnel are not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant

holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. *Iqbal*, 556 U.S. at 676–77; *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under section 1983 based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim that the supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (citations and internal quotation marks omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

For instance, a supervisor may be liable for his "own culpable action or inaction in the training, supervision, or control of his subordinates," "his acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (citations, internal quotation marks, and alterations omitted).

### B. Federal Rule of Civil Procedure 8(a)

Pursuant to Federal Rule of Civil Procedure 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While factual allegations are accepted as true, legal conclusions are not. *Id.*; *see also Twombly,* 550 U.S. at 556–57.

The Court finds that Plaintiff again fails to comply with Rule 8(a). Even though Plaintiff eliminated some defendants and some claims, Plaintiff's second amended complaint largely repeats the same allegations as his first. As with his last complaint, SAC covers events spanning at least over four years, from 2018 to 2022. Plaintiff appears to have added a

conclusory allegation of a new injury occurring on August 24, 2024 (ECF No. 18 at 14), which would make it span six. SAC challenges conduct that is not related, including a failure to accommodate a disability, failure to provide adequate medical treatment, and prison transfer. It asserts various legal claims, including deliberate indifference to serious medical needs, retaliation in violation of the first amendment, and violation of the equal protection clause, among other claims. The factual description for each claim is brief and largely conclusory, consisting of a few brief sentences. It fails to tie the facts to specific claims and for the most part, it fails to tie defendants to specific allegations. The Court cannot determine from Plaintiff's complaint what claims he seeks to bring in this Court, against whom, and based on what conduct.

As the Court warned Plaintiff before (*id.* at 7), on this basis alone, Plaintiff's complaint is subject to dismissal. *See Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1059 (9th Cir. 2011) (affirming denial of leave to amend stating "amendment would have been futile considering the proposed pleading's extraordinary prolixity. Rule 8(a) requires that a complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Fed. R. Civ. P. 8(a)(2).").

**C.  Statute of Limitations**

Based on the face of Plaintiff's Second Amended Complaint, many if not all of Plaintiff's claims under § 1983 are barred as untimely by the statute of limitations.

California's two-year statute of limitations for personal injury actions applies to § 1983 claims. *Butler v. Nat'l Cmty. Renaissance of California*, 766 F.3d 1191, 1198 (9th Cir. 2014); Cal. Civ. Proc. Code § 335.1.

Plaintiff may also be entitled to tolling of two years because Plaintiff appears to be serving a criminal sentence for a term less than life. California Code of Civil Procedure § 352.1(a) provides: "If a person entitled to bring an action, mentioned in Chapter 3 (commencing with Section 335), is, at the time the cause of action accrued, imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life, the time of that disability is not a part of the time limited for the commencement of the

action, not to exceed two years." Here, it appears that Plaintiff is entitled to two additional years of tolling under California Code of Civil Procedure § 352.1(a) because he is imprisoned for a term of less than life.[4]

Further, the Judicial Council of California promulgated emergency rules in response to the COVID-19 pandemic. *See* Judicial Council of Cal., Emergency Rules Related to COVID-19.[5] Under Emergency Rule 9, "[n]otwithstanding any other law, the statutes of limitations and repose for civil causes of action that exceed 180 days are tolled from April 6, 2020, until October 1, 2020." *Id.* That rule provides additional 178 days or about six months of tolling. Federal courts have applied Emergency Rule 9 to § 1983 actions in federal court. *See, e.g.*, *Porter v. Yuba City Police Officers Hansen*, No. 2:20-CV-01554-KJM-DB, 2022 WL 1460124, at *2 (E.D. Cal. May 9, 2022); *Pumphrey v. Battles*, No. 21-CV-09005-JSC, 2023 WL 1769185, at *5 (N.D. Cal. Feb. 3, 2023).

Many if not all of Plaintiff's claims stem from events that occurred in or around February 2018. Even assuming the date of Plaintiff's original complaint controls instead of the date of Plaintiff's First Amended Complaint and assuming that Plaintiff is entitled to the benefit of the mail-box rule for statute of limitations purposes,[6] Plaintiff filed this action on January 18,

---

[4] Federal Rule of Evidence 201 permits a court to take judicial notice of any facts not subject to reasonable dispute and which may be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Materials from a proceeding in another tribunal are appropriate for judicial notice. *Biggs v. Terhune*, 334 F.3d 910, 915 n.3 (9th Cir. 2003) (taking judicial notice of the transcript of Plaintiff's parole hearing), o*verruled on other grounds*; *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (court may take notice of proceedings in other courts, both within and without the federal judicial system, if proceedings directly relate to matters at issue) (citations omitted).

The court takes judicial notice of a related civil rights action brought by Plaintiff in the Central District of California, *Chandra-Das v. Samuels, et al.*, No. 2:23-cv-03829-FLA-SHK. Specifically, according to an exhibit incorporated with Plaintiff's Second Amended Complaint, ECF No. 17 at page 40, Board of Parole Hearing consultation summary, Plaintiff is serving a 25-year determinate sentence.

[5] *See* https://www.courts.ca.gov/documents/appendix-i.pdf (last accessed Feb. 8, 2024). The Court takes judicial notice of these emergency rules under Federal Rule of Evidence 201. *See Arizona Libertarian Party v. Reagan*, 798 F.3d 723, 727 n.3 (9th Cir. 2015) ("We may take judicial notice of 'official information posted on a governmental website, the accuracy of which [is] undisputed.'") (quoting *Dudum v. Arntz*, 640 F.3d 1098, 1101 n.6 (9th Cir. 2011)).

[6] A stamp on the first page of the complaint shows that it was tendered to CDCR for scanning and emailing to the Court on January 18, 2023. (ECF No. 1).

2023. Thus, absent further tolling, Plaintiff may only sue on claims that accrued 4 years and 178 days before that date, or later than July 24, 2018.

In its first screening order, the Court explained that Plaintiff may be "entitled to equitable tolling for exhaustion of administrative remedies." (ECF No. 14 at 12–13). The Court noted that "Plaintiff does not allege specific facts regarding equitable tolling, including the period when Plaintiff was exhausting his underlying claims." (*Id.* at 13). The Court advised, if Plaintiff "chooses to file an amended complaint, he should allege facts sufficient to determine how much, if any, equitable tolling is due," such as "allegations regarding when the underlying incident (or transfer) occurred, whether he is serving a determinate sentence, and . . . the dates on which he filed grievances and when those grievances were fully exhausted." (*Id.* at 13–14).

Despite filing an amended complaint, Plaintiff has failed to allege facts entitling Plaintiff to additional tolling. Plaintiff's allegations related to exhaustion of administrative remedies amount to a single paragraph that provides no dates:

> Grievance Log: HDSP-HC: 18000888, was asserted by the plaintiff due to inadequate medical care/treatment. Documents were falsified in order to vindicate a difference of opinion. Once transferred to another institution the doctor did not want to give me surgery as initially recommended by Dr. Kokor, who is an orthopedics specialist. My request was relegated.

(ECF No. 18 at 2). These allegations are not sufficient to determine how much, if any, equitable tolling is due. Thus, the Court finds Plaintiff failed to establish that he is entitled to equitable tolling for the exhaustion of administrative remedies.[7]

Without equitable tolling, many if not all of Plaintiff's claims are barred by the statute of limitations. As determined above, Plaintiff may only sue on claims that accrued after July 24, 2018. Plaintiff allegations against Defendant Macias stem from an incident that occurred on February 5, 2018. (ECF No. 18 at 11). Plaintiff also briefly references injuries that occurred on January 1, 2018, and June 26, 2018. (*Id.*) Claims stemming from these incidents, as well as

---

[7] The Court notes that in its first screening order, based on the exhibits to the FAC, it found that the same claims would be barred by the statute of limitations even after accounting for equitable tolling due to exhaustion of administrative remedies. (ECF No. 14 at 13–14).

11

those related to allegedly false CID report and transfer to HDSP,[8] all accrued before July 24, 2018, and are therefore barred as untimely.

### D. Supervisor Liability

Under the legal standards set forth above, Plaintiff fails to state a claim for supervisory liability against both defendants, CASTF Warden Sherman and L. Macias, supervising cook at CSATF. Plaintiff's allegations against these supervisors are conclusory and are not supported by factual detail. Plaintiff makes no allegations that either Defendant was personally involved in the constitutional violations at issue. In fact, Plaintiff repeatedly emphasizes that Macias was not supervising him when the injury occurred. (ECF No. 18 at 4, 12). Nor does Plaintiff allege that either Defendant instituted a policy that caused the constitutional violation, that they knew of the alleged violation but failed to prevent it, or that they failed to train or supervise subordinates in a way that led to the alleged violation. It is not enough to merely allege that either Defendant had a general supervisory role, as the facility's warden or the supervisory cook, and that because of that role, they are responsible for the constitutional deprivation suffered by Plaintiff. These types of general allegations that rely upon claims of the general responsibility of the warden for prison operations are insufficient to establish Section 1983 liability. *See, e.g.*, *Nino v. Munoz*, No. 1:20-CV-01722-ADA-CDB (PC), 2023 WL 2143117, at *8 (E.D. Cal. Feb. 21, 2023), *report and recommendation adopted*, 2023 WL 3752416 (E.D. Cal. June 1, 2023) (dismissing § 1983 claims against warden based on conclusory allegations of permitting unspecified practices and policies).

### E. Eighth Amendment Deliberate Indifference to Serious Medical Needs

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). This requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a

---

[8] While Plaintiff fails to allege dates on which these incidents occurred, exhibits to FAC show that Confidential Information Disclosure (CID) Form was dated February 27, 2018 (ECF No. 4 at 9, 23) and that transfer to HDSP occurred before June 18, 2018 (ECF No. 4 at 50).

prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992)) (citation and internal quotations marks omitted), *overruled on other grounds by WMX Technologies v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (*en banc*).

Deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096 (citation omitted). Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation. *Farmer v. Brennan*, 511 U.S. 825, 836–37 & n.5 (1994) (citations omitted).

A difference of opinion between inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004). Additionally, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. To establish a difference of opinion rising to the level of deliberate indifference, a "plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

Although Plaintiff has alleged that he failed to receive the medical care he believes he should have received, Plaintiff's SAC does not contain facts that, even if true, would establish a claim for deliberate indifference to serious medical needs under these standards.

Plaintiff names two defendants who have no involvement in Plaintiff's medical care—a warden and a cook—and does not allege any facts that would establish deliberate indifference by any defendant. Plaintiff does not allege that either defendant knew that he needed additional care and deliberately failed to provide that care. He does not allege that either defendant said or did anything indicating they believed Plaintiff's injury needed additional medical care, yet they purposefully failed to provide such care. To the extent Plaintiff alleges that he should have received some medical care earlier, a difference of opinion regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim.

Thus, Plaintiff again fails to allege sufficient facts to establish an Eighth Amendment deliberate indifference claim.

**F.  Fourteenth Amendment Equal Protection Clause**

The equal protection clause requires that persons who are similarly situated be treated alike. *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985); *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013); *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013); *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008). To state a claim, Plaintiff must show that Defendants intentionally discriminated against him based on his membership in a protected class, *Hartmann*, 707 F.3d at 1123 *Furnace*, 705 F.3d at 1030, *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003), *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166–67 (9th Cir. 2005), *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, *Engquist v. Oregon Department of Agr.*, 553 U.S. 591, 601–02 (2008), *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000), *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008), *North Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008).

There are no facts alleged suggesting that any defendant intentionally discriminated against Plaintiff based on his membership in a protected class or that similarly situated individuals were intentionally treated differently. Plaintiff has not alleged any facts showing that he was treated differently than other similar situated individuals or explaining how any of

14

Defendants' actions were taken because of Plaintiff's membership in a protected class. Therefore, Plaintiff fails to state an equal protection claim against either Defendant.

### G. Americans with Disabilities Act

Title II of the Americans with Disabilities Act ("ADA") provides:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.

To establish a violation of Title II of the ADA, "a plaintiff must show: (1) he is a 'qualified individual with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." *Weinreich v. Los Angeles Cty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997) (alteration omitted) (quoting § 12132). The Supreme Court has held that "[s]tate prisons fall squarely within the statutory definition of 'public entity' . . . ." *Pennsylvania Department of Corrections v. Yeskey*, 524 U.S. 206, 210 (1998) (quoting § 12131(1)(B)).

ADA claims must be asserted against a public entity. *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002); *Gable v. Washington Correction Ctr. for Women*, 857 F. App'x 918, 919 (9th Cir. 2021); *see also Stewart v. Unknown Parties*, 483 F. App'x 374 (9th Cir. 2012) (holding that dismissal of an ADA claim "was proper because defendants, as individuals, were not liable under Title II of the ADA.").

Here, Plaintiff has not named the prison or any other responsible entity for this claim. His claims against individual defendants for violation of the ADA are subject to dismissal.

Moreover, Plaintiff does not allege any accommodations he requested for any service, program, or activity. Plaintiff does not allege the existence of specific reasonable accommodations that defendants failed to provide. And Plaintiff also failed to allege that

1   "exclusion, denial of benefits, or discrimination," if any occurred, "was by reason of his
2   disability."
3         Finally, the ADA does not provide a cause of action for prisoners challenging medical
4   treatment. The Ninth Circuit has held that "[t]e ADA prohibits discrimination because of
5   disability, not inadequate treatment for disability." *Simmons v. Navajo Cnty., Ariz.*, 609 F.3d
6   1011, 1022 (9th Cir. 2010), overruled in part on other grounds, Castro v. County of Los
7   Angeles, 833 F.3d 1060 (9th Cir. 2016) (en banc) (citing *Bryant v. Madigan*, 84 F.3d 246, 249
8   (7th Cir. 1996) ("[T]he Act would not be violated by a prison's simply failing to attend to the
9   medical needs of its disabled prisoners . . . . The ADA does not create a remedy for medical
10  malpractice.")).
11        Accordingly, Plaintiff has failed to state a cognizable claim under the ADA against any
12  Defendant.
13      **H.  Other Claims**
14        Plaintiff also makes conclusory statements that he is alleging "deprivation of property
15  without just compensation," "due process, negligence, right to medical care," as well as
16  "malpractice" and "infringement of workers comp." (ECF No. 18 at 3, 4). Plaintiff alleges no
17  facts in support of these statements and therefore, fails to state these claims.
18        In a single sentence, Plaintiff alleges that he suffered a new injury on August 24, 2024.
19  (ECF No. 18 at 14). Plaintiff alleges no further facts in support of this allegation and therefore,
20  fails to state any claim related to this new injury.
21      **V.     CONCLUSION AND ORDER**
22        The Court recommends that this action be dismissed, without granting Plaintiff further
23  leave to amend. In the Court's prior screening order (ECF No. 14), the Court identified the
24  deficiencies in Plaintiff's complaint, provided Plaintiff with relevant legal standards, and
25  provided Plaintiff with an opportunity to amend his complaint. Plaintiff filed his First Amended
26  Complaint with the benefit of the Court's screening order, but failed to cure the deficiencies
27  identified by the Court. Thus, it appears that further leave to amend would be futile.
28

Plaintiff also filed the motions for injunctive relief and contempt of court (ECF Nos. 17 and 19), but given that the Court does not find any cognizable claims, the Court will recommend dismissal of this motion for the same reasons.

Based on the foregoing, **IT IS ORDERED** that:

1. The Clerk of Court is directed to assign a district judge to this case.

It is further **RECOMMENDED** that:

1. This action be **DISMISSED** with prejudice for failure to state a claim;
2. Plaintiff's motion for preliminary injunction (ECF No. 17) be **DENIED**;
3. Plaintiff's motion for contempt of court (ECF No. 19) be **DENIED**; and
4. All other pending motions and deadlines be terminated, and the Clerk of Court be directed to close the case.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __October 22, 2024__          /s/ Erica P. Grosjean
                                    UNITED STATES MAGISTRATE JUDGE